# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LAURICE MITCHELL,

              Petitioner,           :    Case No. 3:13-cv-224

     - vs -                         District Judge Timothy S. Black
                                  Magistrate Judge Michael R. Merz

WARDEN, Trumbull Correctional
 Institution,
                             :

              Respondent.

# REPORT AND RECOMMENDATIONS

      This is an action on a Petition for Writ of Habeas Corpus, brought *pro se* by Petitioner Laurice Mitchell. Mitchell is serving a twenty-one year sentence in Respondent's custody upon his conviction in the Montgomery County Common Pleas Court on counts of discharging a firearm into a habitation, felonious assault (with a firearm specification), having weapons while under a disability, intimidation of a crime victim, and retaliation (Petition, Doc. No. 1, PageID 1).

      The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

      Petitioner pleads as his sole Ground for Relief: "Did not confront the people that claims [sic] that I had threatened them. And witnesses not showing up to court, but still using their testimony." *Id.* at PageID 5.

After he was convicted, Mitchell appealed to the Montgomery County Court of Appeals and raised the two claims he makes. The court of appeals affirmed his conviction, *State v. Mitchell*, 2012 Ohio 3722, 2012 Ohio App. LEXIS 3292 (2nd Dist. Aug. 17, 2012). He then sought further review by the Ohio Supreme Court, which declined to hear the case. *State v. Mitchell*, 134 Ohio St. 3d 1419 (2013). Because the claims Petitioner makes were all available on the direct appeal record, it appears he has exhausted available state court remedies and not procedurally defaulted on presenting his claims. His Petition was filed well within the statute of limitations, so there are no procedural bars to considering his claims on the merits.

The Second District Court of Appeals found the following underlying facts:

> [*P3]    The present appeal stems from Mitchell's alleged involvement in events that occurred at the Northland Village apartment complex. On August 15, 2010, Shalita Williams argued with Aubrey Jenkins, the father of her four-year-old child, about child-care responsibilities. Appellant Mitchell, who was Jenkins's friend, interjected himself into the argument. At one point, Mitchell threatened to return with a gun to kill Williams. The police were called and when they arrived, Williams told them about Mitchell's threats and accused Mitchell of having a gun and selling drugs. Later the same night, Williams began receiving threatening text messages from a phone number she recognized as belonging to Mitchell. In the messages, he expressed anger about Williams telling police he had a gun and sold drugs. He used profanity and threatened to shoot her on sight.

> [*P4]  The following morning, Williams was inside her apartment when she heard beating on the front door. According to Williams, she opened the door and saw Mitchell standing there. He proceeded to assault her. Mitchell then left, and Williams called the police. Mitchell's girlfriend and Williams's sister then appeared outside the apartment and began fighting. Police arrived while the fight was in progress and arrested both women.

> [*P5]  Following his girlfriend's arrest, Mitchell repeatedly called Williams and threatened to shoot her. Around noon that day, Williams and two friends were sitting in her living room when multiple gunshots came through the wall of the apartment. The women took cover and called the police, who arrived within one

2

minute. Police were present in the apartment when Williams received a phone call from Mitchell's cell phone. During the call, which Williams played over a speaker, Mitchell referred to the shooting as "round one" and warned her that he was going to shoot at her every time he saw her.

[*P6]  Police pin-pointed the location of Mitchell's cell phone to an area near Williams's apartment. Deputies in the area saw Mitchell driving a green Dodge Intrepid. They approached him in the parking lot of an adjoining apartment complex and ordered him out of his car. After unsuccessfully attempting to flee, Mitchell was placed under arrest. Police later watched a surveillance video that captured the shooting on tape. It showed a man matching Mitchell's physical appearance, and wearing clothes matching those he was wearing at the time of his arrest, fire several shots into Williams's apartment and run past two individuals standing outside. During their investigation, police located the two individuals who had witnessed the shooting. The witnesses, Kiera Veal and Marquasha Stewart, positively identified Mitchell as the shooter. Months later, Mitchell began calling Williams from jail and threatening to kill her. On another occasion, Williams received a call from a third-party who offered her money not to testify.

*State v. Mitchell*, 2012 Ohio App LEXIS 3292 (2nd Dist. Aug. 17, 2012).

Mitchell raised his claim that he had not been permitted to confront his accusers as part of his first assignment on direct appeal.  The Second District Court of Appeals decided that claim as follows:

[*P8] In his first assignment of error, Mitchell contends the trial court erred in declaring Veal and Stewart unavailable to testify at trial and allowing the State to present their suppression-hearing testimony to the jury. More specifically, he argues that the State failed to establish a reasonable, good-faith effort to locate the two women and to secure their attendance at trial.

[*P9] This court recently summarized the law governing the foregoing issue in *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012 Ohio 2335:

The United States Supreme Court has held that testimonial, out-of-court statements are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-

examine the witness, regardless of whether the statements are deemed reliable by the trial court. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Evid.R. 804(A), which addresses exceptions to the hearsay rule, defines unavailability as follows: "'Unavailability as a witness' includes any * * * situations in which the declarant: * * * (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

Evid.R. 804(B)(1) provides that, if the declarant is unavailable as a witness, the following are not excluded by the hearsay rule: "*Former testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. * * *"

In criminal cases, the State bears the burden to produce the declarant regarding hearsay made at a prior judicial hearing, or to establish that the declarant is unavailable to testify; the State must satisfy this burden in order to utilize hearsay made at the prior judicial proceeding. *State v. Smith*, 2d Dist. Montgomery No. 22926, 2010 Ohio 745, ¶10, citing *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Confrontation Clause of the Sixth Amendment and Evid.R. 804(B)(1) normally require a showing by the State that the hearsay declarant is unavailable despite reasonable efforts made in good faith to secure his presence for trial. *Id.* at ¶ 11, citing *State v. Keairns*, 9 Ohio St.3d 228, 9 Ohio B. 569, 460 N.E.2d 245 (1984). A showing of unavailability must be based on testimony of witnesses rather than hearsay; mere statements that a search has been made lack sufficient particularity to allow the court to determine what steps have been taken and whether they were reasonable. *Id.* at ¶ 11, ¶ 13.

Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court and will be upheld absent an abuse of discretion and material prejudice. *State v. Haines*, 112 Ohio St.3d 393, 2006 Ohio

4

6711, 860 N.E.2d 91, ¶50; *State v. Noling*, 98 Ohio St.3d 44, 2002 Ohio 7044, 781 N.E.2d 88, ¶43.

*Jackson* at ¶ 48-51.

[*P10] With the foregoing standards in mind, we find no merit in Mitchell's challenge to the trial court's unavailability ruling. Notably, at the outset of the hearing below, which took place on the first day of trial, defense counsel clarified that his "only objection" to the State's use of Veal's and Stewart's suppression-hearing testimony was that he had not had the opportunity for meaningful cross examination. Defense counsel did not object on the basis that unavailability could not be established. (Tr. Vol. I at 227-228). Given defense counsel's failure to dispute unavailability below, Mitchell has waived all but plain error.

[*P11] But even if Mitchell had preserved the issue, we would find no abuse of discretion in the trial court's ruling. Despite defense counsel's lack of an objection, the State proceeded to present sworn testimony from detective Brad Daugherty regarding efforts taken to secure the two witnesses' appearance. Daugherty explained that Veal and Stewart previously had appeared and testified in the suppression hearing once material-witness warrants were issued. (*Id*. at 228-229). Daugherty testified that he then spoke to Veal on the phone a few days before trial and advised her that she needed to appear. When Veal replied that she could not come on the first day, Daugherty told her that she probably could testify on the second day. Daugherty also gave Veal the prosecutor's phone number. (*Id*. at 229).

[*P12] Daugherty further testified that he had visited the separate residences of Veal's parents on multiple [**9] occasions. Each time, he was told that Veal did not live there but that he would be called if they heard from her. (*Id*. at 229-230). Veal previously had given police her mother's address as her own, but Daugherty never found her there. (*Id*. at 230). Despite the issuance of subpoenas, he failed to make contact with her. (*Id*.). Finally, Daugherty testified that a deputy was in the process of attempting to serve Veal with a material-witness warrant to compel her appearance at trial. To Daugherty's knowledge, however, Veal had not been located. (*Id*.).

[*P13] With regard to Stewart, Daugherty testified that he had not had any recent contact with her. Shortly before trial, he had gone to her last known address to attempt to serve a material-witness warrant, but he received no answer. (*Id*.). Daugherty also contacted the office at the apartment complex where Stewart was believed to

live. (*Id*. at 231). Upon being told that she had not turned in her keys or given notice that she was vacating, Daugherty sent deputies to the apartment. (*Id*. at 231). They spoke to neighbors who reported that they had not seen Stewart for days and did not know where she could be found. (*Id*.). While attempting to serve a material-witness warrant for trial, deputies obtained a key and entered the apartment. They found some items inside, but it appeared as if Stewart might have vacated. (*Id*.). Stewart subsequently called the police from a blocked phone number and told them to "leave [her] alone." (*Id*.). On cross examination, Daugherty testified that he had been trying to make contact with Veal and Stewart for at least a month. (*Id*. at 232). Daugherty added that he had no working phone number for Stewart and that neither woman was employed. (*Id*. at 233).

[**\*P14**] After hearing Daugherty's testimony, the trial court found that the State had established unavailability. While Mitchell insists more could have been done to locate Veal and Stewart, the test is whether the State made reasonable, good-faith efforts to secure their appearance, not whether it took every conceivable step. *Keairns*, 9 Ohio St.3d at 248, 460 N.E.2d 245; *Hardy v. Cross*, 132 S.Ct. 490, 495, 181 L.Ed. 468 (2011) ("W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, * * * but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising.").

[**\*P15**] Before the trial court declared the two women unavailable, subpoenas and material-witness warrants had been issued to compel their appearance. In addition, Detective Daugherty visited known addresses on multiple occasions, spoke to Veal on the phone, contacted Stewart's neighbors, and had deputies enter her apartment. Daugherty could not contact employers because neither woman worked. He also had no current phone number for Stewart. After trying for more than a month, he failed to make direct contact with either woman and did not know their whereabouts. In light of these facts, the trial court did not err in finding the existence of reasonable, good-faith efforts to secure their appearance.

[**\*P16**] Mitchell's reliance on *State v. Smith*, 2d Dist. Montgomery No. 22926, 2010 Ohio 745, fails to persuade us otherwise. In *Smith*, a detective had spoken to the witness, Cassie Davis, at her apartment shortly before trial. She indicated that she would not appear despite the issuance of a subpoena. The witness also told

6

police she would hide if a warrant were issued. When the witness failed to appear for trial, police went to her apartment and knocked on her door. She did not answer. Police then spoke to the witness's sister, who advised them that the witness in fact was home. *Id* at ¶ 19-21. On review, this court reasoned:

> We agree with Smith that the State failed to demonstrate that it had exerted reasonable efforts to secure Cassie Davis' appearance for trial. The State knew as early as the Friday before trial that the sole witness who could convict the defendant had received a subpoena and had no intention to appear for trial. The State was informed by Ms. Davis' sister that Ms. Davis intended to hide in her apartment and refuse to answer the door if requested to come to court. The trial court permitted the State to introduce the witness' former testimony even before efforts to bring her to court under a material witness warrant had been attempted. Surely, the defendant's constitutional right to confront his accuser requires something more than the efforts that were used to secure Ms. Davis' appearance than was demonstrated by the State of Ohio. *Id.* at ¶ 24.

**[\*P17]** Unlike *Smith*, police in this case did not simply serve a subpoena, wait until Veal and Stewart failed to appear, knock on their door, and then give up. As set forth above, the two women were subpoenaed, warrants were issued, and Detective Daugherty actively sought them out, describing the specific actions he took. Other deputies also assisted by searching Stewart's apartment and speaking to neighbors. We are satisfied that the facts before us are sufficiently distinguishable from *Smith* to support a different result. The first assignment of error is overruled.

**[\*P18]** In his second assignment of error, Mitchell claims the trial court erred in admitting Veal's and Stewart's former testimony where he lacked a meaningful opportunity and similar motive for cross examination.

**[\*P19]** Although Mitchell raises his argument under the Sixth Amendment, the actual test he applies is found in Evid.R. 804(B)(1).2 The rule provides that "former testimony" is not excluded under the hearsay rule if the declarant is unavailable and the testimony was "given as a witness at another hearing of the same or a different proceeding * * * if the party against whom the testimony is now offered * * * had an opportunity and similar

motive to develop the testimony by direct, cross, or redirect examination."

[*P20] Having reviewed the suppression-hearing transcript, we believe Mitchell had a similar motive for developing the women's testimony at the suppression hearing and at trial, namely to challenge their eyewitness identification of him as the perpetrator—the only real issue in the case. *Compare State v. White*, 2d Dist. Montgomery No. 20324, 2005 Ohio 212, ¶ 26 ("With respect to the admission at trial of Hurlburt's former testimony at the suppression hearing pursuant to Evid.R. 804(B)(1), we conclude that Defendant had a similar 'motive' for developing Hurlburt's testimony at the suppression hearing as would exist at trial, which was to question the reliability of Hurlburt's identification of Defendant as his attacker, as the identity of the perpetrator was the central issue in this case."). "An identical motive to develop testimony is not required by Evid.R. 804(B)(1), only a similar motive." *Id.*

[*P21] Mitchell also contends he lacked a meaningful opportunity for cross examination at the suppression hearing. Specifically, he suggests that his attorney lacked not just the motive, but also the opportunity to delve into what Veal and Stewart saw because the hearing was limited to the suggestiveness of the photo-spread. We disagree.

[*P22] Veal and Stewart did not testify about the suggestiveness of the photo-spread itself. They did provide some testimony, however, about the identification procedure. But they also testified about other things, including (1) the fact that they knew Mitchell before the shooting incident, (2) where they were at the time of the shooting, and (3) what they saw Mitchell do. On cross examination, defense counsel questioned the witnesses regarding their prior knowledge of Mitchell and their ability to observe the incident. If defense counsel had other questions to ask about what they saw or the reliability of their identification, he could have asked them. On appeal, Mitchell has not identified anything in particular that he believes a "meaningful" cross examination would have covered that was not asked by his attorney at the suppression hearing. Although defense counsel's questioning was not lengthy, we are persuaded that a meaningful opportunity for cross examination existed.

[*P23] Finally, even if the trial court had erred in allowing the State to use Veal's and Stewart's suppression-hearing testimony at trial, we would find the error to be harmless beyond a reasonable

> doubt. This is so because the evidence of Mitchell's guilt was overwhelming. The day after Mitchell sent Shalita Williams threatening messages, he appeared at her door and assaulted her. He then began calling her and threatening to shoot her. Within hours, shots were fired into her apartment. With police still at the scene, Mitchell called Williams and threatened to shoot at her again. A surveillance video showed a man matching Mitchell's physical description and clothing firing shots into Williams's apartment. While incarcerated, Mitchell called Williams from jail, threatening once again to kill her. Even setting aside the identification testimony from Veal and Stewart, the foregoing evidence overwhelmingly points to Mitchell's guilt. Thus, any possible error in the trial court's admission of the suppression-hearing testimony was harmless. *Compare White* at ¶ 32. The second assignment of error is overruled.

*State v. Mitchell, supra*, ¶¶ 8-23.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(l); *Harrington v. Richter*, 562 U.S.__ , 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has a prior opportunity for cross-examination ... " *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). In this case, the court of appeals found that the witnesses were unavailable despite extensive efforts to find them and that defense counsel had had an opportunity to cross-examine them at the suppression hearing on the testimony they offered. *Barber v. Page,* 390 U.S. 719, 724-25, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968) ("[A] witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial

authorities have made a good-faith effort to obtain his presence at trial.") *Ohio v. Roberts,* 448 U.S. 56, 74-75, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)("'The lengths to which the prosecution must go to produce a witness … is a question of reasonableness.' The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate."); *United States v. Quinn,* 901 F.2d 522, 528 (6th Cir. 1990) (The Sixth Circuit holding that the prosecution did not make a good faith effort to secure a witness' presence where they issued a subpoena mere days before the trial and attempted to serve the subpoena at the witness' home and mother's house, to no avail, and with no follow up or additional efforts), but compare *Roberts*, *supra*, at 75-6 (holding that five separate attempts to serve a subpoena at the last known address within a few months time span, in addition to conversations with the witness' mother as to her whereabouts, were sufficient to establish good faith effort.) The court therefore concluded there had been no violation of Mitchell's Confrontation Clause rights. That conclusion was neither contrary to nor an objectively unreasonable application of relevant Supreme Court precedent, particularly *Crawford v. Washington, supra*.

Mitchell's other claim is that he did not "confront" the people who accused him of threatening them. As a pro se litigant, Mitchell is entitled to a liberal construction of his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993). The court therefore reads this claim as being the same one Mitchell raised in his third assignment of error on direct appeal, to wit, that there was insufficient evidence to convict him on the witness intimidation charge.[1]

---

[1] Construing this claim as a Confrontation Clause claim because Mitchell uses the word "confront" would not help his cause. Shalita Williams, the witness in question, did in fact testify at trial and was subject to cross-examination,

On appeal Mitchell phrased this claim as trial court error in failing to grant his Ohio Crim. R. 29 motion for judgment of acquittal.  The 2nd District Court of Appeals understood that was the question before them:

> A Crim. R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law.

*State v. Mitchell, supra*, ¶ 26, *quoting State v. Haggerty,* 2011 Ohio 6705, ¶ 20 (2011).

In determining whether there was sufficient evidence, the court of appeals applied the following standard:

> When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt.

*State v. Mitchell, supra*, ¶ 26, *quoting Haggerty, supra,* ¶19. That is the correct federal constitutional standard. *Jackson v. Virginia*, 443 U.S. 307 (1979). The court of appeals applied that standard as follows:

> [*P25] On appeal, Mitchell asserts that the State failed to prove identity because Williams never identified his voice on the calls. He further claims the State failed to establish venue by proving that the calls were made from the Montgomery County jail.
>
> * * *
>
> [*P27] Viewing the evidence in the light most favorable to the prosecution, the record supports reasonable inferences that Mitchell made the calls. Although Williams did not identify him by name when testifying about the calls, her testimony left no doubt that Mitchell was the "he" to whom she was referring. Indeed, the context of her testimony supports no reasonable inference other than that Mitchell was the caller. (Tr. Vol. I at 148-

---

so any Confrontation Clause claim as to her would be meritless.

149). According to Williams, the calls continued until she reported them. (*Id*. at 149). Detective Daugherty acknowledged receiving such a complaint from Williams about Mitchell making threatening calls. (*Id*. at 318). Therefore, the State presented legally sufficient evidence to establish the identity of the caller.

[*P28] We reach the same conclusion regarding venue. Williams testified that the calls were coming from "the jail." (*Id*. at 148). Moreover, detective Daugherty, a Montgomery County sheriff's deputy, testified about obtaining phone records from "our jail" and "the County Jail." (*Id*. at 318-320). He identified 83 phone calls from "the jail" to Williams's cell phone. (*Id*. at 324). This testimony was legally sufficient to establish venue in Montgomery County. Accordingly, the third assignment of error is overruled.

*State v. Mitchell, supra*, ¶¶ 25, 27-28.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam).*

Mitchell has not shown that the court of appeals' decision is an objectively unreasonable application of *Jackson v. Virgina, supra.* In particular he has not shown that there had to be reasonable doubt in the mind of the jurors as to who the "he" was that Williams testified about or which jail was being referred to in the testimony that the calls came from the "jail."

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous.


July 12, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS



Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).